Lorenz Bros. Inc. v. Commissioner.
Lorenz Bros. v. Commissioner
Docket No. 6426.
United States Tax Court
1946 Tax Ct. Memo LEXIS 167; 5 T.C.M. (CCH) 567; T.C.M. (RIA) 46142; June 13, 1946
Clarence Bradford, Esq., 932 Buhl Bldg., Detroit 26, Mich., for the petitioner. A. J. Friedman, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined deficiencies in petitioner's tax liability as follows: Declared
Income
Value Excess
Excess
Year
Tax
Profits Tax
Profits Tax
1940
$ 938.09
$647.02
1941
1,843.95
202.43
$2,790.85
1942
1,410.13
57.37
The questions for our decision are: (1) whether respondent correctly disallowed certain amounts as deductions by petitioner on the ground that such amounts constituted excessive compensation to its officers during the taxable years, and (2) whether respondent correctly computed petitioner's equity invested capital. Petitioner filed its *168 returns with the collector of internal revenue for the district of Michigan at Detroit. The record consists of a stipulation of facts, exhibits and testimony adduced at the hearing. The facts as stipulated are so found. Other facts have been found from the exhibits and testimony. Findings of Fact Petitioner, a Michigan corporation, was organized in 1923 and during the taxable years here involved was primarily engaged in the automobile sales and servicing business in Lansing, Michigan. In 1923 petitioner's capital stock consisted of 5,595 shares of common stock with a par value of $10 each and 2,350 shares of preferred stock with a par value of $10 each. In 1933 petitioner's capital structure was modified, which involved a write-down of the preferred and common stock and also of stockholders' indebtedness. After 1933 and during the taxable years here involved, petitioner's outstanding capital stock consisted of 1,008 shares of common stock having a par value of $10 each. During the taxable years all this outstanding stock was owned by two brothers and their wives, Harold T. and Ruth Lorenz owning 501 1/2 shares and Rolland K. and Viola Lorenz owning 506 1/2 shares. Petitioner's *169 business activities consisted primarily of selling Buick automobiles as an authorized dealer, buying and selling secondhand cars, and servicing and repairing all makes of automobiles. Harold T. Lorenz was petitioner's president and sales manager. During the taxable years he employed and supervised for petitioner from four to six salesmen, who devoted their time to selling new Buicks. Harold also employed for petitioner two to three salesmen who were engaged in buying and selling secondhand cars. In addition to supervising this sales force, Harold also acted as salesman, appraised secondhand cars and closed transactions which the salesmen brought to petitioner. Harold had no vacation during the taxable years. In 1940 petitioner sold 150 new and 300 used cars. In 1941 it sold 325 new cars and 400 old ones. In 1942 it sold 125 new cars with a proportionate drop in the sales of old cars. The reduced sales in 1942 were largely the result of wartime restrictions. Sometime in 1942 petitioner undertook the selling and servicing of certain agricultural machinery to take up the slack in automobile sales. Petitioner's activity with respect to these agricultural machines consisted predominantly *170 of servicing and repairs. Rolland K. Lorenz, Harold's brother, was petitioner's secretary-treasurer and general service manager. He was in charge of maintaining petitioner's buildings which consisted of a 2-story building at the corner of Kalamazoo and River Streets and a parking lot and 1-story building across the road from the 2-story building on River Street. Rolland was also in charge of servicing the new cars sold by petitioner and reconditioning secondhand cars for sale. He employed and supervised, on behalf of petitioner, some 22 to 30 repairmen and mechanics. He was in charge of operating a truck service for petitioner which consisted of hauling machinery. Petitioner represented the American Automobile Association which involved keeping three or four men on the job 24 hours a day, 7 days a week. Rolland was in charge of this activity also. Harold and Rolland each received a salary of $7,500 in 1940 and $9,000 for each of the years 1941 and 1942. In addition to these fixed salaries Harold and Rolland received a total bonus of $6,472.37 in 1940, $10,935.45 in 1941 and $5,373.95 in 1942. This bonus was shared equally by Harold and Rolland in each of these years. On January 27, 1940, petitioner's *171 board of directors voted Harold and Rolland each a salary of $500 a month plus a bonus. On June 28, 1940, the board of directors voted to increase these salaries to $750 a month for the last six months of that year plus a bonus. On January 20, 1941 and January 19, 1942, the board of directors voted each brother a salary of $750 a month plus bonus for each of those years. The minutes of the board of directors' meeting held on January 20, 1941, are typical of the other minutes relating to the salaries and bonuses under discussion and are in pertinent part as follows: The matter of salaries for the officers of the company was brought up by R. K. Lorenz. It was moved by Carl Reynolds that the salaries for the year 1941 be as follows: H. T. Lorenz and R. K. Lorenz shall receive (750.00) seven hundred and fifty dollars per month each, plus a bonus of 25% each payable on December 31, 1941, applicable to that portion of net profits in excess of 10% on the outstanding capital stock of the company. Motion seconded by H. T. Lorenz. Motion carried. The following is a schedule of the net sales, net income after salaries were paid, officers' salaries and percentage of salaries to sales, as shown *172 by the books of petitioner: Officers'
Per Cent
Year
Sales
Net Income
Salaries
to Sales
1936
$ 331,315.03
$ 4,109.84
$ 12,866.67
3.883%
1937
388,681.62
3,097.11
16,129.10
4.149
1938
281,532.14
431.06
10,440.00
3.708
1939
354,159.88
3,551.55
14,621.56
4.128
1940
553,512.45
7,480.37
21,472.37
3,879
1941
653,068.61
11,946.65
28,935.45
4.430
1942
248,453.14
6,381.95
23,373.95
9.407
$2,810,722.87
$36,998.53
$127,839.10
The column headed "Officers' Salaries" represents the total combined salaries and bonuses of Harold and Rolland of which they each received one-half. The capital and surplus at the close of each of the taxable years 1940, 1941 and 1942, as shown on petitioner's tax returns, was $37,647.08, $46,108.10 and $50,866.92, respectively. No dividends were paid by petitioner during the years here involved and there is no record of dividends paid in any year subsequent to the reorganization in 1933. Petitioner deducted as a business expense $21,472.37 in 1940, $28,935.45 in 1941 and $23,373.95 in 1942, which amounts represent the salaries and bonuses paid to Harold and Rolland in those years. Respondent *173 allowed as a deduction the fixed salaries but disallowed as a deduction the bonuses paid Harold and Rolland. In the notice of deficiency respondent explained the disallowance of the bonuses for 1940, which is typical of the explanation for the other two years, as follows: You claimed a deduction for compensation paid to your officers of $15,000.00 under line 15 of the return and an additional deduction of $6,472.32 paid to your officers included in the item "salaries and wages" deducted on line 16 of the return. The payment of $6,472.32 represents a bonus of 25% of the net profit of the business in excess of 10% of the outstanding capital stock of your corporation. The amounts paid were divided equally between Harold T. Lorenz, president, and Rolland K. Lorenz, secretary and treasurer. Of the deduction claimed the amount of $6,472.32 is considered excessive compensation within the purview of Section 23(a) of the Internal Revenue Code and hence has been disallowed. Reasonable compensation for the services rendered to petitioner by Harold and Rolland was $7,500 each in 1940 and $9,000 in 1941 and 1942. Opinion Respondent contends that the bonuses paid *174 by petitioner to Harold and Rolland during the taxable years constituted excessive compensation and disallowed them as deductions on this ground. Petitioner argues that these bonuses were reasonable compensation and are deductible as such under section 23 (a), Internal Revenue Code. [1] We agree with respondent that the compensation paid by petitioner to its officers during the taxable years was excessive in amount to the extent of the bonuses in question. In our opinion the bonus payments do not appear to bear a realistic relationship to the actual value of the services rendered by Harold and Rolland. Harold was in charge of the sales activities of petitioner and Rolland was in charge of servicing, repairs and miscellaneous activities. There is no *175 indication that the activities over which each exercised supervision contributed equally to petitioner's income. On the contrary, the record indicates that the income from sales were quite considerable in 1940 and 1941 but dropped sharply in 1942 due to wartime restrictions. The record further indicates that in 1942 petitioner undertook the selling and servicing of certain agricultural machinery to take up the slack in automobile sales and that petitioner's activities with respect to these agricultural machines consisted predominantly of servicing and repairs. Consequently it would appear that sales accounted largely for petitioner's income in certain years where as the repair work and miscellaneous activities largely accounted for such income in other years. The equality of the bonuses granted by petitioner therefor would seem inconsistent with any intention to compensate on the basis of the value of the services rendered. Nor can the bonus payments be justified as reasonable compensation on the theory that they created incentive. Since Harold and Rolland with their wives were owners of all the outstanding stock of petitioner they would benefit from any increase in petitioner's income *176 in any event. There is also lacking in the instant case any element of an arm's length bargaining between petitioner and its officers with respect to compensation. The record does not disclose who the directors of petitioner were but it is clear that Harold and Rolland were as a practical matter in complete control. Consequently, they fixed the amount of their own compensation. It was advantageous to petitioner taxwise to distribute as much of its profits as possible as compensation rather than as dividends. Also, to so distribute its profits was obviously economically advantageous to the two Lorenz families who owned all of petitioner's outstanding stock. It is significant in this connection that there is no indication in the record that petitioner paid any dividends subsequent to its reorganization in 1933. While the bonus arrangement might be considered fair as between the officers and in a sense not unfair to petitioner, petitioner must nonetheless properly account for its income for tax purposes. See Helvering v. Superior Wines & Liquors, Inc., 134 Fed. (2d) 373, and Am-Plus Storage Battery Co. v. Commissioner, 35 Fed. (2d) 167. The method adopted *177 to compute the bonus payments further indicates, in our opinion, that the bonuses had no relation to reasonable compensation but were essentially a means of distributing profits. The bonuses were based on percentages of net income in excess of 10 per cent of the outstanding capital stock. Thus, the bonuses resulted from petitioner's income from all sources and were in no way proportionate to income created by the individual activities of either Harold or Rolland. Under this formula the bonuses would necessarily increase or decrease as petitioner's net income increased or decreased. It is conceivable that petitioner's income might substantially increase without necessarily involving any increased efforts on the part of its officers. It is not improbable, for instance, that the large sales in 1940 and 1941 resulted from economic conditions prevailing at that time rather than upon increased sales efforts on the part of petitioner's officers. Thus, it is apparent that the bonus formula in practical effect equally divided profits without regard to the value of services rendered. See Botany Worsted Mills v. United States, 278 U.S. 282; Twin City Tile & Marble Co. v. Commissioner, 32 Fed. (2d) 229; *178 Am-Plus Storage Battery Co. v. Commissioner, supra; General Water Heater Corp. v. Commissioner, 42 Fed. (2d) 419; Samuel Heath Co. v. United States, 2 Fed. Supp. 637. Harold's and Rolland's fixed salaries were increased by $250 a month in July 1940. If Harold's and Rolland's activities on behalf of petitioner were greater during the taxable years than in former years, it has not been shown to our satisfaction that this increase in fixed salaries did not adequately compensate therefor. From the record before us it is impossible to contrast their activities during the taxable years with their activities prior thereto. Nor is there any satisfactory evidence comparing the compensation received by Harold and Rolland with compensation paid similar officers by comparable businesses. Under all these circumstances we hold that the bonus payments in question constituted excessive compensation and were correctly disallowed by respondent as a deduction under section 23 (a). The pleadings raised a further question involving the proper computation of petitioner's equity invested capital. In this connection petitioner introduced an exhibit representing *179 its computation of equity invested capital. Respondent conceded that this exhibit correctly reflects the figures recorded in petitioner's books and had no objection to its being received in evidence for that purpose. Except for this exhibit there is nothing in the record and no further explanation in petitioner's brief which would enable us to consider the merits of the question raised. Respondent, on brief, pointed out that petitioner had failed to present this issue in a manner enabling consideration on the merits. Petitioner, in its reply brief, did not deny, explain, or otherwise discuss this point. The method of respondent's computation is in accordance with the statutory provisions and pertinent regulations and in the absence of any evidence upon which to base any substantive inquiry, we hold such computation correct. Decision will be entered for respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩